UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                    Case No. 3:15-cr-467

          Plaintiff

    v.                                                           MEMORANDUM OPINION

Esmeralda Hernandez,

          Defendant

This matter is before me on Defendant Esmeralda Hernandez's Motion for Order of
Competency to Stand Trial, pursuant to 18 U.S.C. § 4241, asserting that she is not competent to
stand trial for the charges pending against her.  (Doc. No. 39).  In response to this motion, I ordered
Ms. Hernandez's competency be evaluated by the Lucas County Court Diagnostic and Treatment
Center.  (Doc. No. 40).  After receipt of the report from Court Diagnostic (Doc. No. 41), and after
some delay due to concerns expressed by defense counsel over whether Ms. Hernandez's current
needs were being met during her confinement at the Lucas County Corrections Center, I scheduled
a hearing on Ms. Hernandez's competency for November 30, 2016.

At the hearing, Defendant offered, and I admitted without objection, the evaluative report of
John Matthew Fabian, Psy.D., supporting Defendant's contention that she is not competent to stand
trial on her current charges.  (Doc. No. 45-1).  The government offered, and I also admitted without
objection, the report authored by Thomas G. Sherman, M.D., Medical Director of the Court
Diagnostic and Treatment Center.  (Doc. No. 41).  No further evidence or argument was offered by
the parties.

Title 18 U.S.C. § 4241(a) instructs that when competency is raised, "[t]he court shall grant
the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe

that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

The relevant provision goes on to state:

(d) Determination and Disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

Accordingly, the decision before me now, based on the two reports submitted for my review, is whether I find, by a preponderance of the evidence, that Ms. Hernandez is presently suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.

In reviewing the reports of both Dr. Fabian and Dr. Sherman, there is little in Ms. Hernandez's early medical and personal history to suggest that she might now be suffering from a

mental disease or defect which would impair her competency to stand trial.  For example, there is no record or indication of fetal alcohol syndrome or complications with her birth which may have caused some organic brain damage or other psychological impairment.  In addition, her early school record reflects nothing terribly out of the ordinary.

But at the age of twelve, she experienced a traumatic head injury as the result of a bus accident, which evidently had a profound and damaging effect on her mental development and functional abilities.  The record is not completely clear about the motivation for the actions which led to the accident.  There is some suggestion that a young Ms. Hernandez was experiencing some depression in the months prior to the accident.  Regardless, Ms. Hernandez, along with a friend, apparently recklessly jumped from the back door of a moving school bus in Houston, Texas, on November 30, 2001 – exactly fifteen years before her competency hearing – and sustained a very serious head injury.

When emergency medical professionals initially arrived at the scene of the accident, she was "not moving, her eyes were closed, and she had a blown left pupil."  Significantly, the first responders were unable to intubate her at the scene, and she was transported to Ben Taub General Hospital in Houston where she was diagnosed with "traumatic brain injury with left subdural hematoma, epidural hematoma posterior fossa, aphasia, and cognitive impairment, as well as left hemiparesis and dysphasia." (Fabian Report, at 4-5).

While she couldn't be intubated at the scene of the accident, she was intubated at the hospital, but by then her initial oxygen saturation was only 80%, and her Glasgow Coma Score was 5[1].  Ms. Hernandez underwent surgery: a craniotomy and evacuation of a left subdural hematoma.  A posterior fossa epidural hematoma required a subsequent surgery.  A CT scan of her head that day revealed "a large epidural versus subdural hematoma in the posterior fossa with compression of the cerebellum and possibly even the brain stem."  Her brain was "severely injured through the

---

[1] A Glasgow Coma Scale score of 3 to 8 is usually indicative of a severe head injury.  (Fabian Report, at 11).

openings near the frontal and temporal lobes." A CT scan the following day showed "a left frontal cortical contusion and diffuse subarachnoid hemorrhage." (Fabian Report, at 5).

Ms. Hernandez was evaluated for concerns about the effects of her accident on December 14, 2001, about two weeks after her fall. She then "presented with problems of daily living, mobility, cognition, and ability to follow commands. She was following 75-90% of verbal commands," although "she was able to write and perform active movements." (Fabian Report, at 5). Ms. Hernandez reports she began failing in school around this time, in the seventh grade, would eventually complete the eighth grade, but failed and left school around the ninth grade.

Dr. Fabian administered to Ms. Hernandez a number of neuropsychological and psychological tests. On the Woodcock-Johnson Test of Academic Achievement, Ms. Hernandez's scores revealed age and grade equivalents from about six and one-half years old to nine and one-half years old. She is currently twenty-seven years old. On the Wechsler Adult Intelligence Scale-IV, as a measure of her current intellectual functioning, she had a Full Scale IQ of 61, putting her in the 0.5 percentile and therefore the mild intellectually disabled range. While her Perceptual Reasoning Index score was better, she fell at or under the fifth percentile on virtually all aspects of the test, including her Verbal Comprehension Index. (Fabian Report, at 7).

On the Neuropsychological Assessment Battery, her orientation was average. But her "simple attention with digits forward was severely impaired." Her memory functioning showed moderate to severe impairments, other than in her delayed recognition of visual shapes. Dr. Fabian also administered the Wisconsin Card Sorting Test, to assess her "nonverbal abstract reasoning skills, ability to form concepts with limited feedback, and mental set shifting." He reports that she had severe impairments in all areas.

Compounding Ms. Hernandez's deficits are the reports by her legal counsel to Dr. Fabian that she was unable to understand basic legal concepts surrounding her charges and her potential

defense.  Counsel reported she often forgets information conveyed and that counsel must repeat herself often both during visits and upon subsequent visits.

After conducting his clinical interview, reviewing her medical and family history, and administering a large and diverse battery of testing, Dr. Fabian reached the following conclusions in his report:

> It is my opinion with a reasonable degree of psychological and neuropsychological certainty that Ms. Hernandez, under federal law, suffers from a mental defect manifested mostly with a history of severe brain injury and traumatic injury in the developmental period and qualifies for intellectual disability, mild, with a full scale IQ of 61 and significant neuropsychological impairments globally.  She also suffers from major depressive disorder and PTSD with a history of polytrauma.  It is my opinion that she is unable to understand the nature and consequences of the proceedings against her and to assist properly in her defense.  Further, it is my opinion that she does not have a rational or factual understanding of the proceedings against her and she is not presently capable of consulting with her lawyer with a reasonable degree of rational understanding.
>
> As noted, she cannot understand fully the charges against her and their severity.  She understands some of the behaviors relevant to the charges, but struggles with felony versus misdemeanor, various punishments and penalties, and does not appreciate her legal predicament.  She did not adequately understand the term probation.  She also did not adequately understand the roles of court participants or the various pleas.  She had some minimal understanding of NGRI but could not consistently appreciate a plea bargain.  She did not understand criminal procedure, burdens or proof, and rights to give up if pleading guilty, for example. While she could testify rationally, she would have difficulty tolerating the stress of the trial and cross examination.  She does not demonstrate a solid capacity in rationally assisting her defense or making legal decisions.  In my opinion, she is clearly lacking in rationally and factually consulting with her lawyer, in understanding the proceedings against her, as well as in making competent and rational legal decisions.  She would benefit from competency restoration, but I am not clear at this time if she is restorable.  I also clearly believe that she likely did not make a knowing[,] intelligent and voluntary waiver of her Miranda rights.  Further assessment would be indicated in that area.[2]

(Fabian Report, at 16).

In contrast to Dr. Fabian's conclusions, Dr. Sherman's report concludes that Ms. Hernandez

"shows no signs or symptoms of a mental illness or defect serious enough to prevent her from

---

[2] Defendant has a pending suppression motion for a statement she made in her case.  (Doc. No. 17). The matter of the Defendant's competency to waive any *Miranda* rights is not properly before me at this time.

understanding the nature and objectives of the proceedings against her or of assisting in her

defense."

> In reaching this conclusion, Dr. Sherman offers the following rationale:

1. There is a degree of incongruity between the amount of information she states "she doesn't know" and spontaneous utterances "I'm going to get my own attorney if she doesn't do better by me".

2. The information contained in the investigative reports give no indication of such a profound lack of knowledge of the circumstances of the offense to have rendered her incompetent.

3. There is no indication of any serious mental illness here.  The only impediments of Competence would be in the form of intellectual deficits.  She certainly does not appear to be demonstrating significant mental retardation despite the "IQ of 61".  This is also supported by the fact that she has been able to live independently, raise at least two of her three children, have gainful employment and was able to take on at least part of the responsibility for [*sic*] half way across the country.

(Sherman Report, at 6).

> Dr. Sherman appears to rely a great deal on his observations of Ms. Hernandez during his interview of her and her associated responses, the absence of any indication by law enforcement that she has exhibited a lack of understanding of her legal predicament, and the absence of any evidence that she suffers from a "mental disease."  I agree that mental disease seems not to be a factor in my consideration.  Indeed, Dr. Fabian does not claim mental disease, but instead mental defect and other related impairments to her understanding these proceedings.

> Curiously, although Dr. Sherman makes reference to the medical records from Ben Taub General Hospital as part of the "materials reviewed in preparation of this report," he makes no mention of the nature of Ms. Hernandez's injury, her diagnosis, course of treatment, or prognosis. He only makes mention of her reference to "the accident."

> As for the psychological testing performed by Dr. Fabian, Dr. Sherman comments only in passing on her Full Scale IQ score of 61, noting "[h]owever, it is not in the purview of a psychiatrist

to make interpretations of the validity of these tests, especially considering that she has apparently had difficulty 'reading.'"  (Sherman Report, at 5).[3]

On balance, I find Dr. Fabian's assessment far more thorough.  He delved into considerable detail regarding Ms. Hernandez's history, in particular her medical records from her traumatic head injury.  He also administered an extensive battery of psychological and neuropsychological testing and detailed his interpretation of those results.  He also ruled out any likelihood that she is malingering.

Further, Dr. Fabian considered the lack of effective communication with her legal counsel and detailed some important legal concepts with which Ms. Hernandez struggled or had no understanding.

For these reasons, as well as the compelling, objective evidence presented in the medical records of her severe accident and its aftermath; Dr. Fabian's extensive testing and clinical interview; and his well-supported conclusions, I find by proof beyond a preponderance of the evidence that Ms. Hernandez is presently suffering from a mental defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense.

Accordingly, pursuant to 18 U.S.C. § 4241(d), it is ordered:

That the Defendant, Esmeralda Hernandez, is committed to the custody of the United States Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future she will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until—

---

[3] Dr. Sherman is a psychiatrist and therefore a medical doctor; Dr. Fabian is a clinical psychologist, with a Ph.D. in psychology.

(A) her mental condition is so improved that trial may proceed, if the court finds that

there is a substantial probability that within such additional period of time she

will attain the capacity to permit the proceedings to go forward; or

(B)  the pending charges against her are disposed of according to law;

whichever is earlier.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge